Angel SOPEÑA and others, Plaintiffs,

v.

COLEJON CORPORATION, Defendant.

Civil No. 94–2249 (GG).

United States District Court,
D. Puerto Rico.

March 6, 1996.

Shapiro & Lugo, Anibal Lugo Miranda, Hato Rey, PR, for plaintiffs.

Wallace Vazquez Sanabria, San Juan, PR, for defendant.

## OPINION AND ORDER

GIERBOLINI, Senior District Judge.

 Pending before this court are several motions filed by defendant Colejon Corporation ("Colejon") requesting, among other things, the dismissal of the case. Before addressing these motions, we must first determine if we have removal jurisdiction, that is, whether we have original subject matter jurisdiction in this case.[1]

## BACKGROUND

This action was commenced by seventeen (17) employees of Colejon in the Puerto Rico Superior Court, San Juan Part, to recover compensation owed to them for the worked performed during their meal time, "in violation of the provisions of labor laws regulating this matter." (See Complaint, docket entry # 1). Defendant removed the case from the state court based on diversity jurisdiction. Afterwards, defendant filed motions requesting the court to dismiss the case against plaintiffs for their lack of prosecution and cooperation in the discovery process or in the alternative to compel them to comply with the proposed discovery and impose sanctions on plaintiffs. Plaintiffs did not oppose the notice of removal nor have requested the case to be remanded. On June 1, 1995 we granted defendant's motion for removal.

Seven (7) days after the expiration of the deadline agreed by the parties[2] for amending the pleadings, plaintiffs filed an amended complaint asserting new claims for back wages, pursuant to Puerto Rico Law No. 379 of May 15, 1948, 29 L.P.R.A. §§ 271 et seq. They also claimed payment of an undetermined amount of compensation under the contract between defendant and the U.S. Navy for the rendering of maintenance services at its Roosevelt Roads Base in Ceiba, Puerto Rico. (See, Amended Complaint, docket entry # 14). Defendants duly opposed.

On July 24, 1995 Colejon requested the dismissal of the complaint, reiterating the averments of its prior motions to dismiss, and asserting that Puerto Rico Employment Laws did not apply to this case because the United States had exclusive jurisdiction over

---

1. Any civil action brought in a state court of which the district courts of the United States have **original jurisdiction,** may be removed by the defendant to the federal district court of the district embracing the place where the civil action is pending. 28 U.S.C. § 1441(a). An action is removable to a federal court only if it might have been brought there originally. *Grubbs v.* *General Electric Credit Corp.,* 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972); *Peltier v. Peltier,* 548 F.2d 1083 (1st Cir.1977); *Oliver v. Haas,* 777 F.Supp. 1040, 1041 (D.P.R., 1991).

2. See the Initial Scheduling and Case Management Order, docket entry # 6.

plaintiffs' job situs, Roosevelt Roads Base. Plaintiffs failed once again to oppose defendant's motion. On September 28, 1995 the parties met with the court for a Trial Setting Conference. During said conference we addressed the jurisdictional issue regarding the fact that plaintiffs' individual claims did not meet the amount of $50,000. Consequently, we vacated and set aside our June 1, 1995 order of removal and ordered the parties to file briefs discussing whether plaintiffs' individual claims could be aggregated in order to comply with the jurisdictional prerequisite that the matter in controversy exceed $50,000.[3] The parties were granted a simultaneous period of ten (10) days to file their briefs and five (5) days to reply.

Colejon filed a timely brief asserting that we had diversity jurisdiction and that since the complaint raised a federal question, we also had subject matter jurisdiction under 28 U.S.C. § 1331. However, plaintiffs did not file their brief nor replied to defendant's brief.

## DIVERSITY OF CITIZENSHIP JURISDICTION

Diversity jurisdiction exists when the claims in the complaint are between citizens of different states and when the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

■ Regarding the first component, citizenship of the parties, the complaint only states that plaintiffs were employees of defendant for several years until it closed operations in Puerto Rico. Colejon's notice of removal asserts that defendant is a corporation organized under the laws of and with its principal place of business in Ohio, and that "based on knowledge information and belief, it is asserted that all Plaintiffs are residents of the Commonwealth of Puerto Rico." (See Notice of Removal, docket entry # 1). Such a generalized allegation regarding plaintiffs citizenship is insufficient to assert diversity jurisdiction. *Riebe v. National Loan Investors, L.P.,* 828 F.Supp. 453, 455 (N.D.Tex.

1993). *See also,* Rule 8(a) of the Fed. R.Civ.P. and *Wilkinson v. U.S.,* 724 F.Supp. 1200, 1205 (W.D.N.C.1989). Hence, defendant, as the party seeking removal, has failed to make the required showing that we have diversity jurisdiction because complete diversity exists between the parties. See *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373–74, 98 S.Ct. 2396, 2402–03, 57 L.Ed.2d 274 (1978); *Toste Farm Corp. v. Hadbury, Inc.,* 70 F.3d 640, 642 (1st Cir. 1995); *Media Duplication Services Ltd. v. HDG Software Inc.,* 928 F.2d 1228, 1235 (1st Cir.1991); *Fountain v. Black,* 876 F.Supp. 1294 (S.D.Ga.1994). See also, *Alexander v. Electronic Data Systems Corp.,* 13 F.3d 940, 949 (6th Cir.1994).

Even assuming that all plaintiffs are citizens of a state other than that of the defendant, the second component of diversity jurisdiction, the amount in controversy, is also lacking.

## AGGREGATION OF CLAIMS

■ Claims of multiple plaintiffs against a single defendant, as in this case, can be aggregated for purposes of determining whether the jurisdictional amount requisite is present, only when they are common and undivided. *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); *Byrd v. Corestates Bank, N.A.,* 39 F.3d 61 (3rd Cir. 1994); 14A Wright & Miller, supra, § 3704, pg. 71.1 However, when the claims are separate and distinct, multiple plaintiffs may not aggregate their claims for such purposes. On the contrary, each plaintiff must independently satisfy the jurisdictional amount. *Zahn v. International Paper Company,* 414 U.S. 291, 294–295, 94 S.Ct. 505, 508–509, 38 L.Ed.2d 511 (1973); *Garza v. National Am. Ins. Co.,* 807 F.Supp. 1256 (M.D.La.1992). Claims of employees of the same employer have been consistently found to be separate and distinct, thus aggregation has been denied. See *Thomson v. Gaskill,* 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Wettre v. Hague,* 81 F.Supp. 590 (D.C.Mass.1949), affd. 175 F.2d 395 (1st Cir.), cert. den. 338 U.S. 870, 70 S.Ct. 147, 94 L.Ed. 534; *More v.*

---

**3.** See *Pitchford v. Aladdin Steel, Inc.,* 828 F.Supp. 610, 612 (S.D.Ill.1993) (Federal district court is obligated to consider correctness of grounds for

removal, notwithstanding plaintiff's lack of vigorous and positive assertion of right to remand).

*Intelcom Support Services, Inc.,* 960 F.2d 466, 472–473 (5th Cir.1992); *Griffith v. Sealtite Corp.,* 903 F.2d 495 (7th Cir.1990) (citing *Zahn v. International Paper Company,* supra).

■ In the present case, plaintiffs claims for overtime and back wages are distinct and separate. Each claim arises out of the individual employment relationship of each plaintiff-employee with defendant-employer, which presumably is also governed by individual employment contracts with Colejon.[4] See *More v. Intelcom Support Services, Inc.,* supra. Therefore, the amount owed to each plaintiff depends upon the hours worked by said individual employee, irrespective of the hours worked by the other plaintiffs. Consequently, whether one plaintiff prevails or fails in his claim has no bearing upon the other plaintiffs' claims.

In conclusion, this case is merely a joinder of independent causes of actions by distinct parties, whom for the sake of economy and convenience, joined against their employer to recover wages due individually to each plaintiff. Therefore, their claims cannot be aggregated for purposes of determining whether the jurisdictional amount requisite is present. See, *Griffith v. Sealtite Corp.,* at 497 (citing *Oliver v. Alexander,* 6 Pet. 143, 8 L.Ed. 349 (1832)). Since in both the original and amended complaint, plaintiffs' individual claims range from $1,000 to $9,000, none of them meet the jurisdictional amount threshold. 28 U.S.C. § 1331(a), supra.

## VALUE TO EITHER PARTY RULE

Colejon argues that we should adopt the "Value to Either Party Rule" in ascertaining diversity jurisdiction in this case because since he could be exposed to a judgment of nearly $105,000 in direct damages, the amount in controversy threshold would then be met.

■ In cases where the matter in controversy is readily definable in terms of dollars, the redress sought by the plaintiff will be precisely the same as the liability to which the defendant is exposed. 1 Federal Procedure, *Access to District Court,* Lawyers Ed., §§ 1:498, pg. 395. Therefore, in this type of cases "courts have typically looked at things from the plaintiff's standpoint, eyeing the benefit expected to accrue to the plaintiff as the best yardstick for measurement of the amount in controversy." *Ferris v. General Dynamics Corp.,* 645 F.Supp. 1354, 1361 (D.R.I.1986).

However, when the amount in controversy is uncertain, or when the value to the plaintiff differs from the loss to the defendant, then the question of which value represents the amount in controversy for jurisdictional purposes arises. It has been in the context of actions to abate a nuisance, suits for declaratory or injunction relief or for any other equitable relief, that the "value to either party" or "defendant's viewpoint" rules have been considered by the courts. 14A Wright & Miller, *Federal Practice and Procedure, Jurisdiction,* § 3703, pg. 60. See also, *Illinois v. Milwaukee,* 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972); *Oklahoma Retail Grocers Association v. Wal–Mart Stores, Inc.,* 605 F.2d 1155, 1160 (10th Cir.1979) and cases cited; *Hambell v. Alphagraphics Franchising, Inc.,* 779 F.Supp. 910, 912 (E.D.Mich.1991); *Maloney v. Gesco Intl., Inc.,* 750 F.Supp. 959, 960 (N.D.Ill.1990); *Bedell v. H.R.C. Ltd.,* 522 F.Supp. 732, 735 (E.D.Ky.1981).

The First Circuit, as well as district courts under its jurisdiction, have looked at the "defendant's viewpoint" rule in cases where the plaintiff sought equitable relief. See, *Commonwealth of Massachusetts v. United States Veterans Administration,* 541 F.2d 119, 122 (1st Cir.1976); *Williams v. Kleppe,* 539 F.2d 803, 805 n. 1 (1st Cir.1976); *Grotzke v. Kurz,* 887 F.Supp. 53, 55 (D.R.I.1995) and cases cited. The most comprehensive discussion regarding the determination of which type of cases call for the "defendant's viewpoint" approach is found in *Ferris v. General Dynamics Corp.,* 645 F.Supp. 1354, 1361 (D.R.I.1986). In that case the court recognized the possibility of recurring to the "defendant's viewpoint" in cases where the

---

4. See plaintiff Elson Cruz–Vargas' deposition testimony, Exhibit B of the Opposition to the

Amended Complaint, pg. 81, docket entry # 15.

plaintiff is seeking equitable relief. However, in cases of monetary damages said viewpoint will not be considered. *Id.*, at 1361–1362.

■ In the present case, plaintiffs are not claiming an equitable relief. On the contrary, their claims are predicated in monetary terms, which merely require a simple arithmetical computation. The fact that defendant's liability in this case could be for an amount in excess of the jurisdictional amount, were as plaintiffs' individual claims are not, does not activate the "defendant's viewpoint" rule. As we stated before, plaintiffs' claims are separate and distinct. If each plaintiff would have opted to file separate claims against Colejon, in the long run he would be exposed to the same total amount to which he is exposed now that all claims have been joined in a single suit.

Therefore, the decisive fact is that each individual claim satisfy the jurisdictional amount. Since they do not, we lack subject matter jurisdiction under 28 U.S.C. § 1332(a).

## FEDERAL QUESTION JURISDICTION

Colejon also asserts that we have subject matter jurisdiction in this case according to 28 U.S.C. § 1331, because plaintiffs job situs, Roosevelt Roads Base, is a federal enclave over which the United States has exclusive jurisdiction. Based on that assertion, defendant maintains that "under 28 U.S.C. § 1331, this Court is the only Court with jurisdiction to determine that laws of Puerto Rico do not apply within the Roosevelt Roads", hence, with authority to dismiss the complaint for lack of jurisdiction.

■ The original complaint is bereft of any indication that plaintiffs claims may arise under federal law. It is in the amended complaint that plaintiffs explicitly assert that their employer was a U.S. Navy contractor providing maintenance services at the Roosevelt Roads Base in Ceiba, Puerto Rico.[5]

It is conceded that the lands upon which Roosevelt Roads Base stands were acquired by the United States of America prior to 1955 and that the jurisdiction of the Commonwealth of Puerto Rico over said lands ceased thereafter and is now vested exclusively in the United States. *Capital Construction v. Secretary of the Treasury,* 89 P.P.R. 319, 323 (1963). This means that the lands so acquired fall within the exclusive legislative jurisdiction of Congress. *People of Puerto Rico v. Koedel,* 927 F.2d 662, 665 (1st Cir.1991).

■ Contrary to Colejon's assertion, the fact that exclusive legislative jurisdiction exists over Roosevelt Roads Base is not equivalent to stating that federal courts have exclusive jurisdiction over all actions arising in a federal enclave. Exclusive legislative jurisdiction and exclusive court jurisdiction are two different concepts; legislative jurisdiction refers to "what law applies", whereas, court jurisdiction means the power of a court to hear a claim, irrespective of the statute under which it arises. The normal rule of construction for court jurisdiction is that where a federal statute is silent, state and federal courts have concurrent court jurisdiction over cases brought under that statute. Only when the federal statute explicitly so provides, the federal district court has exclusive court jurisdiction. *Charles Dowd Box Co. v. Courtney* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962); *People of Puerto Rico v. Koedel,* supra. E.g. *Nolla, Galib & Co. v. Superior Court,* 93 D.P.R. 646, 649 (1966).

■ Furthermore, the fact that the applicable law in a federal enclave, like Roosevelt Roads Base, is that promulgated by the United States, does not by itself dispose of the issue of whether we have removal jurisdiction in this case. A case arises under the Constitution or law of the United States for purposes of removal jurisdiction if its adjudication depends on the application of any of these sources of federal law. 28 U.S.C. § 1331; *Gully v. First National Bank in Meridian,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Northeast Federal Credit Union v. Neves,* 837 F.2d 531, 535 (1st Cir. 1988); *Pueblo Int'l, Inc. v. De Cardona,* 725 F.2d 823 (1st Cir.1984); 14A Wright & Miller, supra, § 3722, pg. 232. Section 1331 of

---

**5.** In the context of removal jurisdiction, the court may examine plaintiffs' amended complaint to determine whether it presents a federal question. 14A Wright & Miller, supra, § 3722, pg. 260.

Title 28 does not by itself confers a district court subject matter jurisdiction. *Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir.1980); 1 Federal Procedure, *Access to District Court*, supra, § 1:380, pg. 293. E.g. *Mesa v. California*, 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). Therefore, whether we possess removal jurisdiction *vel non* hinges upon whether there is a statute providing employees of government contractors payment for overtime and back wages for time worked during their meal period and whether said statute creates a private cause of action which confers this court original jurisdiction to entertain it. See, *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916); *Maritime Service Corp. v. Sweet Brokerage De Puerto Rico, Inc.*, 537 F.2d 560, 562 (1st Cir.1976).

Federal enclave jurisdiction, as a form of federal question jurisdiction, has been recognized in cases where a plaintiff's cause of action arises under the state law that existed at the moment in which the United States acquired the federal enclave. Until superseded, such existing state laws for the protection of private rights remain in force and are incorporated into federal law and become federal law within the meaning of 28 U.S.C. § 1331. *Chicago, Rock Island & Pacific Ry. Co. v. McGlinn*, 114 U.S. 542, 5 S.Ct. 1005, 29 L.Ed. 270; *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596 (1940); *Celli v. Shoell*, 40 F.3d 324, 328 (10th Cir.1994); *Mater v. Holley*, 200 F.2d 123 (5th Cir.1952).

In this case, the existing Puerto Rican Employment Laws before 1955 did not provide for overtime pay for work done in excess of forty (40) hours nor for work done during the meal time period. Puerto Rico Law No. 379, as it existed prior to 1955, merely required overtime pay for hours worked in excess of eight (8) during any period of twenty four (24) consecutive hours or in excess of forty eight (48) hours during any week. L.P.R. No. 379 of 1948, pg. 1258. Furthermore, it was not until Law No. 379 was amended in 1961 that employers were required to pay their employees the extraordinary compensation claimed by plaintiffs in this action for the meal time period. L.P.R. No. 121 of 1961, pg. 276. Hence, plaintiffs' claims are not based on Law No. 379 as it existed prior to the United States acquisition of the Roosevelt Roads Base. On the contrary, it is based on Law No. 379 as it has been subsequently amended. Therefore, we do not have federal enclave jurisdiction in this case.

The Service Contract Act of 1965, 41 U.S.C. §§ 351 et seq., was approved by Congress to provide labor standards for the protection of employees of contractors furnishing services to or performing maintenance service for the United States Government. *Masters v. Maryland Management Co.*, 493 F.2d 1329 (C.A.4 1974); *Halifax Technical Services, Inc. v. U.S.*, 848 F.Supp. 240 (D.D.C.1994). However, this act exclusively regulates the minimum wages and fringe benefits owed to government contractors' employees, to whom it simply confers an administrative remedy. 41 U.S.C. §§ 351 & 352. As to claims for overtime pay, the Service Contract Act refers to other applicable federal laws, thus it does not provide a cause of action for such claims. 41 U.S.C. § 355. The Contract Work Hours and Safety Standards Act ("C.W.H.S.S.A."), 40 U.S.C. §§ 327 & 330 regulates the overtime compensation of laborers and mechanics employed by a government contractor whose contract exceeds $100,000. 40 U.S.C. § 329(a) & (c) (Supp.1995). However, it does not provide for the compensation of work performed during the meal period. Moreover, like the Service Contract Act, it does not create a private cause of action. 40 U.S.C. § 330(c) (Supp.1995).

The complaint is devoid of any indication that Colejon's contract with the U.S. Navy is in excess of $100,000, so as to be able to determine whether the C.W.H.S.S.A. would apply. Even if it applied to plaintiffs, we then would not have original jurisdiction to entertain their claims. On the other hand, the complaint is also lacking the specific nature of the services performed by Colejon's employees in the base or whether they are engaged in interstate commerce, so as to allow us to assume that the Fair Labor Standards Act ("F.L.S.A.") would be the statute under which plaintiffs causes of action would

arise.[6] *Mitchell v. Lublin, McGaughy & Assoc.*, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959). See, *Nolla, Galib & Co. v. Superior Court*, 93 D.P.R. 646, 648 (1966) (holding that the F.L.S.A. applies to the employees of a U.S. Navy contractor because they were considered engaged in interstate commerce); *Wirtz v. B.B. Saxon Company, Inc.*, 365 F.2d 457, 460–461 (5th Cir.1966) (holding that employees of an Air Force contractor providing water, sewage, janitorial and custodial services to the base office buildings, living and recreational areas, were not within the protection of the F.L.S.A.).

■■■■■ In support of its allegation in favor of removal, Colejon simply avers that state law does not apply in this case. Such bare allegations are insufficient to make the required showing that we have removal jurisdiction in this case. See, 14A Wright & Miller, *Federal Practice and Procedure, Jurisdiction*, § 3721, pgs. 209–210. See also, *Fountain v. Black*, supra; *Díaz v. Swiss Chalet*, 525 F.Supp. 247, 248 (D.P.R.1981). On the contrary, its allegations are phrased more in terms of a federal law defense. It is settled that a case may not be removed on the basis of a federal law defense, including that of preemption, even if the defense is anticipated in the plaintiff's complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Therefore, in order to avoid the inexpediency and unfairness of exposing a plaintiff to the possibility of having his case tried in a court that lacked jurisdiction on removal, all doubts must be resolved against it. See, *Bally v. Natl. Collegiate Athletic Ass'n*, 707 F.Supp. 57 (D.C.Mass.1988).

WHEREFORE, in view of the above, this case is hereby **REMANDED** to the Puerto Rico Superior Court, San Juan Part. See, 28 U.S.C. § 1447(c). Judgment will be entered accordingly.

**SO ORDERED.**

---

**6.** It is settled that in determining whether federal question jurisdiction exists, the starting point is the "well-pleaded complaint" rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987).