En el Tribunal Supremo de Puerto Rico

| Velia Quiles Viuda de Fonte<br>    Recurrente<br><br>    V.<br><br>Colsa, Inc.<br>    Recurrido | Solicitud de<br>Revisión<br><br>99TSPR1 |
|---|---|

Número del Caso: RE-94-618

Abogado de la Parte Recurrente: Lcdo. Emilio a. Soler Mari

Abogado de la Parte Recurrida: Lcdo. Carlos E. Aguilar Pérez

Tribunal de Instancia: Superior de Humacao

Juez del Tribunal de Primera Instancia: Hon. Mario Canales Ydrach

Fecha: 1/15/1999

Materia: Acción Civil

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Velia Quiles Viuda de Fonte

    Demandante-Recurrente

       v.                    RE-94-618       Certiorari

Colsa, Inc.

    Demandada-Recurrida

Opinión del Tribunal emitida por el Juez Presidente, señor Andréu García

San Juan, Puerto Rico a 15 de enero de 1999

Debemos resolver si los tribunales de Puerto Rico poseen jurisdicción para adjudicar una reclamación por alegado manejo negligente de una póliza de seguro de vida grupal instada por una empleada contra un concesionario que presta servicios en una base militar de Estados Unidos en Puerto Rico.

I.

La señora Velia Quiles de Fonte ha laborado como secretaria en la Base de Roosevelt Roads, en Ceiba, Puerto Rico, desde 1981. Sus servicios son prestados a compañías que adquieren mediante licitación la concesión para prestar diversos tipos de servicios a la Marina de Estados Unidos en dicha base.

A partir de 1988 la señora Quiles prestó servicios a General Electric Government Services, Inc., con quien mantenía un seguro grupal que incluía un seguro de vida de su esposo por $15,000.00 como póliza electiva. En abril de 1991, Colsa Inc., sustituyó a General Electric como concesionario. Sin embargo, como era la práctica, la señora Quiles y los empleados de General Electric permanecieron en sus puestos, ahora como empleados de Colsa, Inc. [en adelante "Colsa"].

El 3 de octubre de 1991, el esposo de la señora Quiles falleció, por lo que ésta procedió a reclamar de Colsa el pago de la póliza por concepto del seguro de vida que había obtenido mientras laboraba para G.E. Government Services. Colsa, sin embargo, le negó a la señora Quiles los beneficios del seguro de vida.

Luego de varias gestiones extrajudiciales infructuosas, la señora Quiles instó una demanda en el extinto Tribunal Superior, Sala de Humacao, contra Colsa. En ella, alegó, entre otras cosas, que "Colsa, Inc. [...] fue culpable y negligente en la tramitación y ejecución de las [...] pólizas así como también mediante engaño manteniendo escondida una situación a todas luces perjudicial e injusta a la demandante". Exhibit 1, a la pág. 3. Por ello, reclamó el pago de la póliza de vida correspondiente a su esposo, con sus respectivos intereses, más "los daños y sufrimientos mentales y espirituales atravesados por ésta que se estiman en $70,000.00". Id. Colsa Inc. solicitó la desestimación de la reclamación aduciendo, en esencia, que conforme a la doctrina del enclave militar, los tribunales en Puerto Rico carecen de jurisdicción para adjudicar la reclamación.

Luego de varios incidentes procesales, el foro de instancia acogió los planteamientos de la demandada y desestimó la acción.

No conforme con esta determinación, la señora Quiles acudió ante nos señalando como único error la actuación del foro de instancia de desestimar su demanda al amparo de la doctrina de enclave militar.

Accedimos a revisar.

II.

Recientemente tuvimos la oportunidad de expresarnos en torno a la naturaleza de la jurisdicción que posee el Congreso Federal de Estados Unidos sobre los terrenos en donde se encuentra la Base Roosevelt Roads. En Roberts v. U.S.O. Council of Puerto Rico, Opinión y Sentencia de 17 de marzo de 1998; 145 D.P.R. ___ (1998), resolvimos que conforme al esquema estatutario existente al momento en que Estados Unidos adquiere los terrenos en donde ubica dicha base militar, véase, Ley de 16 de febrero de 1903, ese país ostenta jurisdicción exclusiva sobre los terrenos ocupados por la Base.

Ahora bien, al precisar el alcance de esa jurisdicción, recurrimos a la interpretación que en Estados Unidos se ha hecho de la cláusula decimoséptima de la sección 8 del Art. I de la Constitución de Estados Unidos, la cual confiere al Congreso federal la facultad de ejercer el derecho exclusivo a legislar en todas las materias sobre las tierras adquiridas con el consentimiento del Estado en que radicaren con el fin de construir fuertes, almacenes, arsenales, astilleros y otras edificaciones que fueren necesarias.[1]

Destacamos que, de conformidad con dicha disposición constitucional, en los estados de Estados Unidos, la exclusividad de jurisdicción en cuanto a los terrenos cedidos por los estados al gobierno federal se limita "a una legislativa y no a una judicial". Roberts v. U.S.O. Council of Puerto Rico, supra. Aunque en Puerto Rico no aplica esta disposición constitucional, Moore v. Corte, 59 D.P.R. 620, 623 (1941), resolvimos que la misma conclusión se impone en nuestra jurisdicción. De este modo, resolvimos que la jurisdicción exclusiva que ostentan las bases militares

---

[1] Dicha disposición constitucional dispone:

> **El Congreso tendrá facultad:** [...] Para ejercer el derecho exclusivo a legislar en todas las materias concernientes a aquel distrito (cuya superficie no excederá de diez millas en cuadro) que, por cesión de algunos estados y aceptación del Congreso, se convierten en la sede del Gobierno de los Estados Unidos; y **para ejercer igual autoridad sobre todas aquellas tierras adquiridas con el consentimiento de la Asamblea Legislativa del estado en que radicaren, con el fin de construir fuertes, almacenes, arsenales, astilleros y otras edificaciones que fueren necesarias** [...]. Const. de EE.UU., Art. I, sec. 8, cl. 17 (énfasis suplido).

de Estados Unidos en Puerto Rico se limita a una jurisdicción legislativa y no a una jurisdicción judicial.

Al definir estos conceptos y su alcance práctico, expresamos lo siguiente:

> El concepto de "jurisdicción legislativa" se refiere a quién tiene la facultad de regular, mediante legislación, determinada materia, hecho o situación. Esto es, [...] que es el gobierno federal, y no los estados ni Puerto Rico, el que cuenta con la facultad de legislar en los enclaves federales. [...]. Por otra parte, "jurisdicción judicial" trata sobre qué tribunal, estatal o federal, está autorizado a entender en determinada controversia, irrespectivo de la ley al amparo de la cual surja la reclamación. Id.

Finalmente, resolvimos que, en ausencia de una expresión congresional en cuanto a la exclusividad de la jurisdicción de los foros federales, o "ante la existencia de una incompatibilidad insalvable entre la reclamación al amparo de legislación federal y el hecho de que un tribunal estatal adjudique la controversia" id., los tribunales de Puerto Rico poseen jurisdicción concurrente con los tribunales federales para adjudicar controversias surgidas en los enclaves militares.

Conforme a esta norma, es forzoso concluir que erró el tribunal de instancia al desestimar la reclamación instada por la señora Quiles de Fonte. En ausencia de una reserva de jurisdicción expresa por parte del Congreso federal, los tribunales de Puerto Rico poseen jurisdicción concurrente con los federales para adjudicar la reclamación de la señora Quiles de Fonte.

Ahora bien, ¿cuál es el derecho aplicable a la controversia de autos?

### III.

Como expresamos, la jurisdicción exclusiva legislativa se refiere a quién ostenta la facultad última para legislar o regular un asunto en determinado ámbito territorial. Conforme a nuestros pronunciamientos en Roberts v. USO Council, supra, de ordinario, la legislación aplicable a una controversia originada en una base militar es el derecho federal. Ahora bien, la aplicabilidad de esta norma general supone que el Congreso Federal haya legislado sobre la materia específica que es objeto de

consideración por los tribunales locales. Dicho de otro modo, la aplicación del derecho federal está condicionada a que en efecto exista derecho federal aplicable.

En este contexto, en Gearheart v. Haskell, 87 D.P.R. 57 (1963), al determinar cuál era el derecho aplicable a una reclamación de daños y perjuicios por actos ocurridos en la Base Ramey Fields, destacamos que la Ley Federal de 1 de febrero de 1928, 45 Stat. 54, reconocía la aplicabilidad de las leyes de los estados en el caso de reclamaciones por daños y perjuicios por muertes ocurridas como consecuencia de culpa o negligencia dentro de una base militar. En aquella ocasión, además, reconocimos que el Tribunal Supremo de Estados Unidos había ampliado el alcance de esa disposición congresional al sostener que cuando ocurre la cesión de un terreno estatal al Congreso Federal, "las leyes existentes en la soberanía cedente para la protección de los derechos privados que no fueran inconsistentes con las leyes de la nueva soberanía, continuaban en vigor hasta que fueran derogadas o enmendadas por la nueva soberanía". Id. a la pág. 62, n.2. Con ello, se pretende evitar que, ante la ausencia de disposiciones congresionales específicas sobre determinada materia, cualquier territorio, por pequeño que fuera, no quedara desprovisto de leyes que regularan los derechos privados. Gearheart v. Haskell, 87 D.P.R. a la pág. 62, n.2.

Esta norma, de estirpe antigua, véase, Chicago Rock Island & Pacific Ry. Co.  v. McGlinn, 114 U.S. 542 (1884), ha sido reiterada por el Tribunal Supremo federal en varias ocasiones. U.S. v. Mississippi Tax Comm´s, 412 U.S. 363 (1972); James v. Stewart & Co. V. Sadrakula, 309 U.S. 94, 99-100 (1940).[2] Además, la misma es consecuente con nuestros

---

[2] Por ejemplo, en James v. Stewart & Co. V. Sadrakula, supra, el Tribunal Supremo de Estados Unidos destacó:

> The Constitution does not command that every vestige of the laws of the former sovereignty must vanish.  On the Contrary its language has long been interpreted so as to permit the continuance until abrogated of those rules existing at the time of the surrender of sovereignty which govern the rights of the occupants of the territory transferred.  This assures that no area however small will be without a developed legal system for private rights. Id., a las págs. 99-100.

pronunciamientos en Nolla, Galib & Cía. v. Tribunal Superior, 93 D.P.R. 646 (1966), en donde expresamos que si bien los obreros allí reclamantes estaban cubiertos por la Ley de Normas Razonables de Trabajo de 1938 del Congreso de Estados Unidos por considerarse dedicados al comercio interestatal, también les aplicaban las leyes de Puerto Rico "en todo aquello que les resulte más beneficioso que las disposiciones de la [ley federal]" Id. a la pág. 648.

En el caso de autos nos confrontamos con una acción entre partes privadas en la que se exige el pago de una indemnización por concepto de daños y perjuicios "por el manejo negligente de la póliza de seguro", y su cumplimiento específico, sobre la cual los tribunales de Puerto Rico poseen jurisdicción para adjudicar.

Conforme a la discusión precedente, la reclamación de la señora Quiles de Fonte contra Colsa debe ser tramitada al amparo del derecho sustantivo de Puerto Rico.[3] Esta conclusión se refuerza, no sólo por el hecho de que no existe derecho federal sustantivo aplicable al caso de autos, sino porque aún bajo procedimientos tramitados al amparo del "Federal Tort Act", 28 U.S.C. secs. 1346, 2671 et seq., el derecho que rige las reclamaciones por actos u omisiones negligentes es el derecho sustantivo del estado en donde ocurre el acto u omisión negligente, Kruchter v. U.S., 914 F.2d 1106 (1990); Reynolds v. U.S., 805 F.Supp. 336 (1992), aún cuando tal acto u omisión hubiese ocurrido en un enclave militar federal. Shankle v. U.S., 796 F.2d 742 (1986); Orr v. U.S., 486 F.2d 270 (1973). Véanse además, Santiago v. U.S., 884 F.Supp. 45 (1995, D. Puerto Rico); Regla 3.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 3.3.

En virtud de lo anterior, la acción por daños y perjuicios extracontractuales instada por la señora Quiles de Fonte deberá ser

---

[3] No surge de los autos que la póliza de seguro involucrada en este caso fuese presentada y admitida en evidencia en el foro de instancia. Por lo tanto, partimos de la premisa de que no existe derecho federal aplicable a la controversia en torno al cumplimiento específico de lo dispuesto en dicha póliza.

resuelta a la luz del derecho de daños puertorriqueño y a la luz de las disposiciones específicas pactadas por las partes en la póliza de seguro.

Se emitirá la correspondiente sentencia.


José A. Andréu García
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Velia Quiles Viuda de Fonte

    Demandante-Recurrente

       v.                    RE-94-618       Certiorari

Colsa, Inc.

    Demandada-Recurrida

SENTENCIA

San Juan, Puerto Rico a 15 de enero de 1999

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto solicitado y se revoca la Sentencia emitida por el extinto Tribunal Superior de Puerto Rico, Sala de Humacao, en el caso Civil Número HCD 93-0134, Velia Quiles Viuda de Fonte, demandante, v. Colsa, Inc., demandada.

Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma compatible con la Opinión del Tribunal.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Isabel Llompaart Zeno
Secretaria del Tribunal Supremo